IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN SAENZ, )<br>)<br>PLAINTIFF, )<br>)<br>v. )<br>)<br>BUCKEYE CHECK CASHING OF )<br>ILLINOIS, LLC, CHECKSMART )<br>FINANCIAL, LLC, and COMMUNITY )<br>CHOICE FINANCIAL, INC., )<br>)<br>DEFENDANTS. ) | Case No. 16-cv-06052<br><br>Hon. Manish S. Shah<br><br>Magistrate Susan E. Cox |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Now Comes Plaintiff, Juan Saenz, by and through his attorneys, and for his Response to Defendants Motion to Dismiss, states as follows:

**INTRODUCTION**

Defendant Buckeye Check Cashing of Illinois, LLC ("Buckeye") seeks to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), claiming that Plaintiff has failed to state a claim for relief; Plaintiff lacks standing because he has not suffered an injury-in-fact; FDCPA violations cannot be brought against Buckeye because it is not a debt collector; and that no factual basis supports a claim against co-defendants CheckSmart Financial, LLC ("CheckSmart") and Community Choice Financial, Inc. ("Community Choice").

Defendant claims that Plaintiff has failed to state a claim because his complaint is "deficient in supporting facts." (Dkt. #12, Defendant's Memorandum in Support of Motion to Dismiss, p. 2). Defendant further argues that Plaintiff lacks standing because he has not alleged that he suffered "an actual harm." (Dkt. #12, p. 4). Defendant supports this notion by alleging that Plaintiff is not seeking actual damages because "it is difficult to conceive of what concrete

1

injury Saenz could have suffered here," and he has not alleged that he suffered any emotional or monetary harm. (Dkt. #12, p. 5). Defendant further claims that no informational injury occurred because no "risk of real harm" exists beyond the violation of a statutory right. (Dkt. #12, pp. 6-7).

Defendant also claims that Plaintiff's FDCPA claim cannot be brought against it because it is a creditor, and it cannot be both a creditor and a debt collector, unless a creditor "uses a name other than its own for collection purposes." (Dkt. #12, pp. 7-8). Finally, Defendant claims that its co-defendants, CheckSmart and Community Choice, should be similarly dismissed because Plaintiff failed to allege what actions Defendant took on behalf of its co-defendants, and has failed to allege sufficient facts to support a claim against its co-defendants. (Dkt. #12, p. 8).

As will be shown below, Plaintiff has made facially plausible claims necessary to withstand the Motion to Dismiss, and respectfully requests that Defendant Global's Motion to Dismiss be denied.

## **STANDARD**

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir. 2000); *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir. 1993). Documents which are referred to in a complaint and are central to a claim, as well as any matters of public record, may be considered on a motion to dismiss. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir. 2002); *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994). To survive a

motion to dismiss, a complaint must contain sufficient facts to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (*Conley*). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir. 1995).

Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion may be raised at any time in the litigation to assert that the court lacks subject-matter jurisdiction. *Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235, 1240 (2006). In order for a plaintiff's case to survive a 12(b)(1) motion, "a plaintiff need only show the existence of facts that could, consistent with the complaint's allegations, establish standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F. 3d 440, 443 (7th Cir. 2009). *See also Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130 (1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F. 3d 490, 495 (7th Cir. 2005).

The FDCPA "is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009).

## ARGUMENT

### I. Plaintiff Has Stated Two Claims for Relief Under the FDCPA

Defendant claims that Plaintiff has failed to state a claim because his complaint "is deficient in supporting facts." (Dkt. #12, p. 2). Plaintiff, however, has stated two claims under the FDCPA: (1) Defendant failed to provide certain notices in its initial communication with Plaintiff regarding Plaintiff's various rights to dispute the alleged debt or request additional

3

information, in violation of 15 U.S.C. § 1692g(a); and (2) Defendant made a false, misleading and deceptive misrepresentation regarding its status as a debt collector in order to instill fear and induce Plaintiff to make a payment, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10). *See* Plaintiff's Complaint. All of the alleged violations arise from a single collection letter, on Buckeye letterhead, sent on January 25, 2016. *See* Collection Letter, attached to Plaintiff's Complaint as Exhibit D.

Under § 1692g(a) of the FDCPA, debt collectors are provided with a list of required notices that must be contained in the initial communication, or within five (5) days of the initial communication with a consumer. 15 U.S.C. § 1692g(a). The notice need not be repeated in collection letters verbatim, but debt collectors must not "mak[e] the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude." *Bartlett v. Heibl*, 128 F. 3d 497, 500 (7th Cir. 1997). The FDCPA explicitly states that all five disclosures under § 1692g(a) must be made to the consumer.

It is well settled that an incomplete statement of the section 1692g(a)(1) through (5) information violates the FDCPA. *See Baker v. G.C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982); *Lombardi v. Columbia Recovery Group, L.L.C.*, 2013 WL 5569465 (W.D. Wash. Oct. 9, 2013) (omitted "any portion" of the debt); *Wilson v. Mattleman, Weinroth & Miller*, 2013 WL 2649507 (D.N.J. June 12, 2013) (failed to state that the debt would be assumed valid); *Wenig v. Messerli & Kramer P.A.*, 2013 WL 1176062 (D. Minn. Mar. 21, 2013) (failed to state the thirty-day time period in which to submit a written dispute); *Welker v. Law Office of Horwitz*, 626 F. Supp. 2d 1068 (S.D. Cal. 2009) (notice of written request requirement); *Forsberg v. Fid. Nat'l Credit Servs., Ltd.*, 2004 U.S. Dist. LEXIS 7622 (S.D. Cal. Feb. 25, 2004) (failing to state portion of

debt could be disputed, by failing to state that debt verification would be provided); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736 (N.D. Ill. 2003) (failure to state any portion of debt may be disputed and omitting words "in writing"); *Dolan v. Schreiber & Assocs., P.C.*, 2002 U.S. Dist. LEXIS 6005 (D. Mass. Mar. 19, 2002) (magistrate recommendation), adopted by 2002 U.S. Dist. LEXIS 5998 (D. Mass. Mar. 29, 2002) (identity of original creditor misstated); Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P., 217 F. Supp. 2d 336 (E.D.N.Y. 2002) (request for verification of debt or identity of original creditor must be in writing; amount of debt); *McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2002) (omitted dispute must be "in writing" and may dispute "any portion" of debt); *Prevete v. Margolin & Meltzger*, 1998 WL 426700 (E.D.N.Y. May 19, 1998); *Altergott v. Modern Collection Techniques*, 1994 WL 319229 (N.D. Ill. June 23, 1994); *Kaschak v. Raritan Valley Collection Agency*, 1989 U.S. Dist. LEXIS 19103 (D.N.J. May 22, 1989) (failure to state may dispute debt in part); Halverson, FTC Informal Staff Letter (Nov. 15, 1993); Weiss, FTC Informal Staff Letter (Apr. 17, 1986); Clement, FTC Informal Staff Letter (Nov. 12, 1985); Custardo, FTC Informal Staff Letter (Jan. 28, 1980); Appx. J.2.6.5, infra. *But* cf. Bezpalko v. Gilfillan, Gilpin & Brehman, 1998 WL 321268 (E.D. Pa. June 17, 1998) (omission of right to dispute "any portion" of debt acceptable); Rosenberg, FTC Informal Staff Letter (Jan. 16, 1991).

   Plaintiff has alleged that the January 25, 2016 collection letter was the initial communication between Buckeye and Plaintiff, and that Plaintiff did not receive any other letters from Buckeye after January 25, 2016. *See* Complaint, ¶¶ 17, 19. The collection letter, however, failed to include most of the notices required under § 1692g(a), including Plaintiff's right to dispute the validity of the debt and obtain verification of the debt. *See* Complaint, ¶ 18. Thus,

Buckeye has failed to provide the proper notices of Plaintiff's consumer rights under the FDCPA, in violation of 15 U.S.C. § 1692g(a).

Plaintiff has also alleged violations under § 1692e of the FDCPA, which prohibits a debt collector from using any false, or any deceptive or misleading representation or means in connection with the collection of a debt, including the false representation of the character, amount or legal status of any debt, see, 15 U.S.C. § 1692e(2)(A) and § 1692e(5). A false representation can still lead to liability under § 1692e even if the act is unintentional. *Turner v. J.V.D.B. Assocs.*, 330 F. 3d 991, 998 (7th Cir. 2003); *Gearing v. Check Brokerage Corp.*, 233 F. 3d 469, 472 (7th Cir. 2000) (citing *Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996) (because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages)).

Plaintiff has alleged that Buckeye's collection letter states that the alleged debt "has now been transferred to our office for collection," without clearly indicating who "our office" refers to, whether Buckeye is a creditor or a debt collector, or who the letter is actually from. *See* Complaint, ¶¶ 22-24. Buckeye is either a creditor attempting to represent that a fictitious third party was attempting to collect the debt, or a third party collector is using Buckeye's name, attempting to represent that the alleged debt is still with the creditor. Neither Plaintiff, nor the unsophisticated consumer, is required to conduct guesswork to ascertain whether Buckeye is the creditor or debt collector, or from whom the letter is actually from. *See Catencamp v. Cendant Timeshare Resort Group-Consumer Finance, Inc.*, 471 F. 3d 780, 782 (7th Cir. 2006).

Buckeye, either proclaiming to be a debt collector or proclaiming that a third party debt collector is involved, is making an intentional misrepresentation to instill fear and induce Plaintiff to make a payment by indicating that "the price of poker has just gone up." *See*

6

Complaint, ¶¶ 27-29; *see also Avila v. Rubin*, 84 F. 3d 222, 229 (7th Cir. 1996) (referring to a similar escalation, from a third party collection agency to an attorney, in that the reason for such an escalation in a dunning campaign is to strike fear in the heart of the consumer). Thus, Buckeye has made false, deceptive and misleading representations in an attempt to collect the alleged debt by proclaiming to be a debt collector in order to instill fear and induce Plaintiff into paying the alleged debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10).

Furthermore, "proof of one violation is sufficient" to support a plaintiff's claim under the FDCPA. *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990). Thus, Plaintiff need not succeed on both of his claims, as only one violation is needed for Plaintiff to succeed under the FDCPA. Drawing any reasonable inferences in a light most favorable to Plaintiff, Plaintiff has alleged sufficient facts to state a plausible claim under § 1692g and/or § 1692e, and therefore, Defendant Buckeye's 12(b)(6) motion to dismiss must be denied.

## II. Plaintiff Has Standing Under the FDCPA Because Defendant Has Violated a Substantive Right Created By Congress

Defendant Buckeye claims that Plaintiff does not have standing under the FDCPA because the injury he suffered as a result of Defendant's conduct allegedly is not "concrete," which is one of the elements for meeting the "injury in fact" requirement for standing (the other being that the injury is "particularized"). *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016) ("We have made it clear time and time again that an injury in fact must be both concrete *and* particularized.") Defendant does not dispute that Plaintiff meets the particularization requirement, nor can it legitimately do so because Plaintiff alleges Defendant made misrepresentations to Plaintiff *himself* and that Defendant failed to give Plaintiff notice of *his* right to dispute the debt under the FDCPA. That is more than sufficient. *See Id.* Thus, the only

issue is whether Plaintiff's injury is "concrete." As explained below, Plaintiff easily meets that requirement.

### A. The "Concreteness" Element of Injury in Fact.

A "concrete" injury is simply one that is real or *de facto*, *i.e.*, not abstract. *Spokeo*, 136 S.Ct. at 1548. It does not need to be large or substantial, or even tangible. It can also be intangible, and amount to nothing more than an "identifiable trifle." *United States v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 689, fn.14 (1973). As the Supreme Court explains:

> "Injury in fact" reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to distinguish a person with a direct stake in the outcome of a litigation -- even though small -- from a person with a mere interest in the problem. We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, see *Baker v. Carr*, 369 U.S. 186; a $ 5 fine and costs, see *McGowan v. Maryland*, 366 U.S. 420; and a $ 1.50 poll tax, *Harper v. Virginia Bd. of Elections*, 383 U.S. 663. …. As Professor Davis has put it: "The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."

*Students Challenging Reg. Agency Procs.*, 412 U.S. at 689, n.14 (citations omitted); and, *e.g.*, *Leung v. XPO Logistics, Inc.*, No. 15 C 03877, 2015 WL 10433667, at *4 (N.D. Ill. Dec. 9, 2015) (lost time declining survey on pre-recorded confers standing); *Palm Beach Golf Ctr.-Boca v. John G. Sarris*, 781 F.3d 1245, 1251 (11th Cir. 2015) (concrete injury exists when the plaintiff's fax line is tied up for "one minute.").

Likewise, "concrete" does not mean economic or monetary. *See*, *e.g.*, *Id.* and *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) (having to show a photo ID is a concrete injury); and *see Students Challenging Reg. Agency Procs.*., 412 U.S. at 689, n.14. To the contrary, *Spokeo* reaffirms that a concrete injury, in addition to being intangible, can amount to nothing more than a "risk of real harm." *Spokeo*, 136 S.Ct. at 1549. In fact, *Spokeo* goes even

further, recognizing that the alleged violation of a statute, by itself, can supply the requisite injury. *Id.* at 1544.

### B. Defendant's Violation of Plaintiff's Substantive Rights under the FDCPA Is a Concrete Injury.

Contrary to what Defendant suggests, *Spokeo* expressly states that "the violation of a procedural right granted by statute *can* be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S.Ct. at 1544 (first italics added). Indeed, *Spokeo* describes the required injury as "an invasion of a legally protected interest…" *Id.* at 1548, *quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Finally, *Spokeo* reaffirms that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S.Ct. at 1549, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992). Accordingly, *Spokeo* instructs that the particular statutory violation asserted materially affects whether the plaintiff has alleged a concrete injury.

Importantly, *Spokeo*'s remarks about whether and when a statutory violation is itself a concrete injury was limited to *procedural* rights, apparently because the FCRA provisions at issue in that case were procedural. *See Spokeo*, 136 S.Ct. at 1545, citing, *inter alia*, 15 U.S.C. §1681e ("Compliance Procedures"). The majority did not discuss the concrete injury requirement in the context of *substantive* rights.

Justice Thomas's concurrence fills this gap, confirming that in the context of substantive or "private" rights, the violation alone meets the concrete injury requirement:

> Common-law courts imposed different limitations on a plaintiff's right to bring suit depending on the type of right the plaintiff sought to vindicate. Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more. "Private rights" are rights "belonging to individuals,

9

> considered as individuals." 3 W. Blackstone, Commentaries *2 (hereinafter Blackstone). …. In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy.
>
> * * *
>
> A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right. See *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 373–374, 102 S.Ct. 1114, 71 L. Ed. 2d 214 (1982) (recognizing standing for a violation of the Fair Housing Act); *Tennessee Elec. Power Co.* v. *TVA*, 306 U.S. 118, 137–138, 59 S.Ct. 366, 83 L. Ed. 543 (1939) (recognizing that standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege").

*Spokeo*, 136 S.Ct. at 1551 and 1553 (Thomas, J., concurring).

The *Havens Realty* case Justice Thomas cites is particularly instructive. A unanimous Supreme Court ruled that the violation of the plaintiff's statutory right not to be lied to about available housing was an "injury in fact" even if the plaintiff had no intention of doing business with the defendant, and interacted with the defendant *fully expecting* it to violate her rights:

> As we have previously recognized, "[the] actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, *supra*, at 500, quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent *fully expecting* that he would receive false information, and *without any intention* of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).

*Havens Realty Corp.*, 455 U.S. at 373-74 (emphasis added). Needless to say, one who interacts with a firm having no intention of doing business with it, and expecting the firm to lie, suffers no harm beyond the statutory violation. Nevertheless, in the context of substantive rights, the Court ruled nothing more is required to meet Article III. *See Havens Realty Corp.*, 455 U.S. at 373-74.

10

This is a long-standing rule in the Seventh Circuit. *Bellwood v. Dwivedi*, 895 F.2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]")

Indeed, one federal appeals court just reaffirmed this rule in an FDCPA case, citing both *Havens Realty* and *Spokeo* to hold that a debt collector's violation of a debtor's statutory right to receive a notice is sufficient, by itself, to meet the concrete injury requirement. *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 (11th Cir. July 6, 2016) (unpub.). Noting that this right is substantive (*Id.*, n.2), the Court ruled that "Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures…" *Id*. As in *Havens Realty*, the plaintiff in *Church* did not identify harm beyond the violation of his substantive rights, and yet the Court ruled that he still met the injury requirement. *See Id.* In short, *Havens Realty* and *Church* squarely establish that a violation of one's substantive rights, by itself, is a "concrete" injury under Article III.[1]

The lower courts in a number of cases, including FDCPA cases, have applied both *Spokeo* and *Church* to conclude that violations of a plaintiff's substantive FDCPA rights or other statutory rights is itself a concrete injury. *See Quinn v. Specialized Loan Servicing*, 2016 U.S.

---

[1] As *Church* shows, *Havens Realty* remains good law. They are consistent with *Spokeo*, which describes the required injury as "'*an invasion of a legally protected interest*' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548 (emphasis added). *Spokeo*'s majority does not criticize or distinguish *Havens Realty*, even though Justice Thomas favorably cites it. Finally, because *Spokeo* did not decide the case before it, it cannot be read to overrule *Havens Realty*. *See Stein v. Buccaneers, LP*, 772 F.3d 698 (11th Cir. 2014) ("A Supreme Court dictum in a different setting rarely suffices to overturn a clear circuit holding on the precise question at issue.") (citing cases).

Dist. LEXIS 107299 at *11 (N.D. Ill. Aug. 11, 2016) ("a number of courts have already confronted *Spokeo*-based standing challenges in FDCPA cases and have rejected the argument that SLS asserts here."); *Dickens v. GC Services Limited Partnership,* Case No., 2016 WL 3917530 (M.D. Fla., July 20, 2016) (FDCPA case holding that "an alleged failure to comply with a federal law,'…. 'may indeed be enough to confer standing. *Spokeo* in no way stands for the proposition that it is not.') *Lane v. Bayview Loan Serv., LLC*, 2016 U.S. Dist. LEXIS 89258 (N.D. Ill. July 11, 2016) (FDCPA case holding that "[w]hen a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit." Lane at pg. 7); *see also Guarisma v. Microsoft Corp.*, 2016 U.S. Dist. LEXIS 97729, at *6-13 (S.D. Fla. July 26, 2016) (FACTA case); *Altman v. White House Black Mkt., Inc.*, 2016 U.S. Dist. LEXIS 92761, *11 (N.D. Ga. July 13, 2016) (FACTA case).

Defendant claims there is no concrete injury because Plaintiff does not allege actual damages, but this argument fails because again, "damages" or other tangible loss are not required. Intangible harm, including a violation of one's substantive rights, is sufficient. *See Spokeo*, 136 S.Ct. at 1549; *see also Lane*, 2016 U.S. Dist. LEXIS 89258 ("even absent actual monetary damages, it is still possible to satisfy the concrete-harm requirement."). Defendant also claims its misrepresentations did not fool Plaintiff into paying the alleged debt, but this is just another variation on its "no actual damages" argument which, as shown, is not required for a concrete injury. Finally, Defendant argues that the failure to give Plaintiff notice of his right to dispute the debt was not harmful because Defendant thinks Plaintiff had no "need" to exercise that right, but Defendant's beliefs about Plaintiff's alleged needs cannot trump Congress's determination that *all* consumers have a right to know they are entitled to dispute the debt and demand proof of its

12

validity, as provided by §1692g of the FDCPA. *See Spokeo*, 136 S. Ct. at 1549 ("the judgment of Congress play[s an] important role[]."); *see also Church*, 2016 U.S. App. LEXIS 12414 at \_\_\_ ("Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures…"); and *Quinn*, 2016 U.S. Dist. LEXIS 107299 at *12-*13 ("SLS's alleged failure to provide the Quinns with information required under the FDCPA constitutes a sufficiently concrete harm for purposes of Article III standing.")

More importantly, Defendant fails to squarely confront the substance of *Havens Realty*, and it entirely fails to address *Bellwood*, *Church* or any of the lower court decisions that conclude, post-*Spokeo*, that a violation of substantive rights conferred by Congress is a concrete injury. Ignoring them, however, does not make them go away. As shown above, Plaintiff alleges Congress gave him a substantive right to notice that can dispute the debt, and a substantive right to not be subjected to misrepresentations. He alleges Defendant violated those rights. Accordingly, he has alleged a concrete injury, and Defendant Buckeye's 12(b)(1) motion to dismiss should be denied.

### III. Defendant Buckeye Purported to be a Debt Collector and Must Be Treated As a Debt Collector Under the FDCPA

Defendant Buckeye claims that because it is the creditor on the alleged debt, it cannot also be a "debt collector" under the FDCPA because the "terms are mutually exclusive." (Dkt. #12, pp. 7-8) (citing *Schlosser v. Fairbanks Capital Corp.*, 323 F. 3d 534, 539 (7th Cir. 2003); *F.T.C. v. Check Investors, Inc.*, 502 F. 3d 159, 173 (3d Cir. 2007)). Defendant claims that the *only* time a creditor can be treated as a debt collector is "when it uses a name other than its own for collection purposes." (Dkt. #12, p. 8) (citing 15 U.S.C. § 1691a(6)[sic]). However, a creditor must also be treated as a debt collector when it poses as a debt collector.

The FDCPA covers collection activity by debt collectors and generally excludes creditors

13

except for "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). In *Catencamp*, a collection letter that was actually from the creditor stated that it was from a debt collector, and thus, the sender of the letter, the creditor, was bound by the requirements of the FDCPA. *Catencamp*, 471 F. 3d at 782. "When a letter *proclaims* . . . that it is coming from someone other than the creditor . . . a debtor naturally supposes himself to be in contact with a debt collector." *Id.* at 781.

When determining whether to apply the FDCPA to a creditor, however, the "issue is not whether the entity engaged in collection is, in fact, a separate corporate entity, [but rather] whether, under the particular factual circumstances present, the 'least sophisticated consumer would have the false impression that a third party was collecting the debt.'" *Carlson v. Long Island Jewish Med. Ctr., et al.*, 378 F. Supp. 2d 128, 131 (E.D.N.Y. 2005) (citing *Maguire v. Citicorp Retail Services, Inc.*, 147 F. 3d 232, 236 (2d. Cir. 1998)). The collection letter here is most akin to that in *Ekinici v. GNOC Corp*, where the collection letter did not clearly indicate the relationship between the attorney, from whom the letter was sent, and the creditor, for whom the attorney worked, but rather, it stated that the "'account ha[d] been forwarded to [attorney's] office,' leaving the impression that her office was somehow different from [the creditor's].'" No. 02-CV-3928 (JG), 2002 WL 31956011 at *3 (E.D.N.Y. Dec. 31, 2002). The court found that the letter did not clearly establish the attorney's position within the company, and avoided referring to the creditor or "using first-person pronouns to convey that [the attorney] was an employee there." *Id.* The court determined that the unsophisticated consumer would not be expected to determine whether she represented the creditor or a different entity. *Id.* The FDCPA "does not require, however, either sophistication or guesswork," and collection letters must be interpreted

14

from the perspective of the unsophisticated consumer. *Catencamp*, 471 F. 3d at 782 (citing *Gammon v. GC Services Limited P'ship*, 27 F. 3d 1254 (7th Cir. 1994)).

Here, though the collection letter at issue is on Buckeye letterhead, and Buckeye does not use the name of any third parties, it does state that "We are required by contract with Buckeye . . ." and that "Your debt has now been transferred to *our* office for collection." *See* Collection Letter, attached to Plaintiff's Complaint as Exhibit D (emphasis added). The letter makes the inference that it is coming from an entity *other than* Buckeye because, like in *Ekinici*, it avoids using first-person pronouns, and instead refers to Buckeye in the third person. Plaintiff, and the unsophisticated consumer, would not be expected to understand whether this letter is coming directly from Buckeye or from a third party representing Buckeye. Regardless, Buckeye is either purporting to be another entity acting as its own debt collector, or Buckeye is in contract with the actual sender of this letter, whom is still unknown at this stage in the pleadings. Either way, there either is a third party debt collector, or Buckeye is purporting to be a debt collector, and the FDCPA must be applied.

**IV. CheckSmart and Community Choice Are Vicariously Liable for the Actions of Buckeye**

Defendant Buckeye claims that its co-defendants, CheckSmart and Community Choice, should be dismissed because Plaintiff's Complaint lacks factual support for their liability. (Dkt. #12, p. 8). Plaintiff, however, has alleged that CheckSmart and Community Choice are vicariously liable for Buckeye's actions. Plaintiff alleged that Community Choice is a parent company, of which Buckeye and CheckSmart are subsidiaries, share their principal place of business and are related entities. *See* Complaint, ¶¶ 9, 11. Therefore, CheckSmart and Community Choice authorized, directed and ratified Buckeye's actions, and are liable for Buckeye's actions. *See* Complaint, ¶¶ 32-33; *see also Fox v. Citicorp Credit Services, Inc.*, 15 F.

15

3d 1507 (9th Cir. 1994); *Pollice v. National Tax Funding, L.P.*, 225 F. 3d 379 (3rd Cir. 2000). A debt collector bears the burden of monitoring the activities of those it enlists to collect debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, *7 (7th Cir. Apr. 7, 2016).

Notwithstanding the facts alleged in Plaintiff's Complaint, Community Choice's publicly-filed Form 10-K with the Securities Exchange Commission (SEC) states that Community Choice "is a holding company and conducts substantially all of its business operations through its subsidiaries." Community Choice Financial, Inc. Form 10-K, March 30, 2016, p. 4 (Retrieved from http://secfilings.nasdaq.com, August 10, 2016). Community Choice's Form 10-K further states that it "was formed . . . by the shareholders of CheckSmart Financial Holdings Inc. to be the holding company of CheckSmart Financial Holdings Corp. . . ." *Id.* at p. 16. The Form 10-K lists various "locations and operations" such as "CheckSmart," "Buckeye CheckSmart," and "Buckeye Title Loans." *Id.* at pp. 5-6.

Therefore, CheckSmart and Community Choice are vicariously liable for Buckeye's violations of the FDCPA.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss should be denied.

    Respectfully Submitted,

    By: s/Michael J. Wood
        Michael J. Wood

Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
73 W. Monroe Street, Suite 502
Chicago, IL 60603

Ph: (312) 757-1880
Fx: (312) 265-3227
mwood@communitylawyersgroup.com
celethachatman@communitylawyersgroup.com

**CERTIFICATE OF SERVICE**

I, Michael J. Wood, an attorney, hereby certify that on August 16, 2016, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: August 16, 2016**                                            Respectfully submitted,

                                                                      By:     s/Michael J. Wood    
                                                                              Michael J. Wood